## Office of Disciplinary Counsel v. Zeigler

Disciplinary Board Docket no. 49 D.B. 2005.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SAIDIS, *Member,* March 17, 2006—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On April 18, 2005, Office of Disciplinary Counsel filed a petition for discipline against Daniel F. Zeigler, respon-

dent. The petition charged respondent with violations of Rules of Professional Conduct 1.15(a) and (d) and 8.4(c) arising out of alleged acts of commingling and conversion of entrusted funds. Respondent did not file an answer to petition for discipline.

A disciplinary hearing was held on July 28, 2005, before a District III Hearing Committee comprised of Chair Michael W. King, Esquire, and Members Thomas C. Clark, Esquire and Anne C. Shapiro, Esquire. Respondent appeared pro se.

The Hearing Committee filed a report on November 22, 2005, finding that respondent violated the Rules of Professional Conduct as charged in the petition for discipline, and recommending that he be suspended from the practice of law for a period of three years.

This matter was adjudicated by the Disciplinary Board at the meeting on February 1, 2006.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, Office of Disciplinary Counsel, whose principal office is located at Suite 1400, 200 N. Third Street, Harrisburg PA 17101, is invested, under Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of that rule.

(2) Respondent, Daniel F. Zeigler, was born in 1947 and was admitted to practice law in the Commonwealth

in 1972. He maintains his office at 4 Coal Street, P.O. Box 186, Lansford PA 18232. He is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(3) Respondent has no prior history of discipline.

(4) At all times pertinent hereto, respondent maintained an IOLTA checking account at M & T Bank (trust account).

(5) At all times pertinent hereto respondent maintained a general office non-fiduciary checking account at M & T Bank (office account).

(6) Beginning in 2002, respondent represented Raymond Gusick as personal representative and heir of the Edward Gusick estate.

(7) On August 16, 2002, respondent made a deposit of $1,180.19 in funds of the Gusick estate into his office account.

(8) At the time of the August 16, 2002 deposit into the office account, that account contained $674.84 in non-fiduciary funds of respondent.

(9) Respondent was given no authority by Raymond Gusick to use any funds of the Gusick estate for personal use at any time or in any manner.

(10) Respondent used a portion of the Gusick estate funds when he issued a check dated August 4, 2002, from the office account, in the amount of $937.80 made payable to Kutztown University for an obligation of his daughter who was a student at the university at that time.

(11) The office account balance on September 4, 2002, was $414.48, which was $765.71 less than the $1,180.19

that should have been maintained for the Gusick estate.

(12) On September 5, 2002, respondent deposited $29,404.54 in funds of the Gusick estate into his office account.

(13) The September 5, 2002 deposit represented the last funds received by respondent for the Gusick estate.

(14) As of September 5, 2002, respondent was entrusted with a total of $30,584.73 in funds of the Gusick estate.

(15) Between September 5, 2002 and April 10, 2003, respondent made five distributions totaling $16,053.51 from the office account on behalf of the Gusick estate, as follows:

(i) On November 21, 2002, check number 770 in the amount of $1,523.45 was issued to Raymond Gusick in payment of his executor's commission;

(ii) On January 7, 2003, check number 778 in the amount of $3,452.65 was issued to Porambo Funeral Home in payment of an estate obligation;

(iii) On March 6, 2003, check number 785 in the amount of $22.50 was issued to the Commonwealth of Pennsylvania;

(iv) On March 18, 2003, check number 784 in the amount of $55 was issued to *Carbon County Law Journal;*

(v) On April 10, 2003, check number 791 in the amount of $11,000 was transferred to the trust account.

(16) The balance in the office account for the Gusick estate after the $11,000 transfer should have been $14,531.22.

(17) The balance in the office account after the transfer of $11,000 to the trust account was $166.80.

(18) Between September 5, 2002 and April 10, 2003, by checks drawn on and paid from the office account, respondent personally used funds of the Gusick estate totaling $14,364.62.

(19) Respondent's personal use of Gusick estate funds included:

(i) Check number 754 in the amount of $5,156.10 issued to the Jim Thorpe National Bank dated September 18, 2002, and paid September 19, 2002, for payment on two personal loans;

(ii) Check number 759 in the amount of $1,825.60 issued to Kutztown University dated October 22, 2002, and paid October 28, 2002, in payment of an obligation for his daughter;

(iii) Check number 774 in the amount of $250 issued to Lawyer Assessment on November 27, 2002, and paid December 13, 2002, in payment of his annual Attorney Registration fee and late charges for fiscal year 2002-2003;

(iv) Check number 780 in the amount of $912.80 issued to Kutztown University on January 16, 2003, and paid January 24, 2004, in payment of an obligation of his daughter.

(20) On April 9, 2003, respondent deposited $2,447.56 into the trust account which represented funds that he received for payment of a school tax obligation of a client, Michael Watkins.

(21) On April 10, 2003, respondent attempted to pay the obligation of Michael Watkins by causing to be issued

trust account check number 425 in the amount of $2,447.56, made payable to Portnoff Law Associates and bearing the notation "Michael Watkins (Sch. tax)."

(22) On April 10, 2003, respondent transferred $11,000 of the Gusick estate funds from the office account to the trust account.

(23) At the time of the April 10, 2003 deposit of $11,000, the trust account contained no other funds of the Gusick estate.

(24) On April 10, 2003, respondent made Gusick estate distributions from the trust account totaling $23,822.65.

(25) The distributions made on April 10, 2003 were more than the $11,000 of Gusick funds in the trust account.

(26) The $12,822.65 shortage was paid in part from funds respondent held for Rebrag Inc. or All Staffing Inc., companies which were owned by Stanley Costello, who was at the time a client of respondent and his current employer.

(27) Stanley Costello either permitted or ratified respondent's use of the funds from Rebrag Inc. or All Staffing Inc. to make up for the $12,822.65 shortfall that respondent owed to the Gusick estate on April 10, 2003.

(28) On April 10, 2003, when respondent's trust account check number 425 in the amount of $2,447.56, made payable to Portnoff Law Associates for Mr. Watkins was presented to his bank on May 5, 2003, for payment, the balance in the trust account was $3.51 resulting in an overdraft of $2,444.05.

(29) Respondent's trust account contained insufficient funds to pay the Watkins' obligation because those funds had been used to make up other shortfalls.

(30) On May 12, 2003, respondent covered the trust account overdraft of $2,444.05 by making a deposit of $2,500.

(31) The source of the deposit was from funds received from Rebrag Inc., having been authorized or ratified by Stanley Costello, the owner of Rebrag.

(32) On May 15, 2003, the Pennsylvania Lawyers Fund for Client Security (LFCS) sent a letter to respondent which provided him with a copy of an overdraft notice sent to the LFCS by M & T Bank. The notice reflected the overdraft on May 6, 2003, in the amount of $2,444.05 in the trust account.

(33) The LFCS letter of May 15, 2003, requested that respondent provide within seven business days a written explanation of why the overdraft occurred, as well as copies of bank statements, the dishonored check, relevant client ledgers, copies of the bank statements for the IOLTA account for the prior three months, and copies of the instruments used to satisfy or cover the overdraft with an explanation of the source of those funds.

(34) On June 13, 2003, respondent called LFCS and requested an extension of time to respond. He was given until June 19, 2003.

(35) Respondent failed to respond to the LFCS.

(36) In a letter dated June 27, 2003, the LFCS advised respondent that the matter had been referred to the Office of Disciplinary Counsel because of respondent's failure to respond to its request for information.

(37) Petitioner sent a letter to respondent on July 7, 2003, which referenced the referral from the LFCS and requested that respondent provide within 10 days: copies of the bank statements for his trust account for the period of March 1, 2003 to July 7, 2003; copies of the front and back sides of all cancelled checks for that same period; copies of client ledgers reflecting all transactions for that same period; the identity of clients and the amount of funds held for each as represented by the balance in the trust account on March 1, 2003; and an explanation of the course of the funds represented by each deposit to the account for that same period along with copies of the deposited items and the deposit slips.

(38) Respondent did not respond to petitioner's letter of July 7, 2003.

(39) On August 8, 2003, a Supreme Court subpoena/subpoena duces tecum, returnable on August 22, 2003, was personally served on respondent by petitioner requesting the same trust account records as requested in petitioner's letter of July 7, 2003.

(40) Respondent failed to respond to the subpoena served on him on August 8, 2003.

(41) On September 24, 2003, respondent deposited settlement proceeds of $6,000 received for Doris Anderson in the office account and made a distribution to her in the amount of $5,000 on September 26, 2003.

(42) On October 16, 2003, respondent deposited $8,420 in the office account for the Bernard Connelly estate and paid $7,400 to the Schuylkill County Register of Wills for Inheritance Tax on November 3, 2003.

(43) In January 2004, a second Supreme Court subpoena/subpoena duces tecum, returnable on February 6,

2004, was personally served on respondent directing the production of the same trust account records as the August 8, 2003 subpoena, along with additional records for the trust account and the office account.

(44) Respondent failed to respond to the January 2004 subpoena.

(45) Respondent failed to maintain any ledgers or other records for his trust account, and was unable to determine what funds he was holding for any particular client relative to any particular transaction at any given time for the period in question.

(46) All funds that respondent handled for the Gusick estate, Connelly estate and for Doris Anderson were funds that were required to be transacted through the IOLTA trust account.

(47) Although respondent testified that he had funds of Rebrag Inc. available to him in his trust account contemporaneous with the shortages in his office account which resulted from his personal use of the funds of the Gusick estate, the funds were used from the Gusick estate before deposits were made from Rebrag Inc.

(48) Respondent offered no credible reason as to why he placed the Gusick estate funds in his office account.

(49) Thomas J. McCall testified as a character witness for respondent and stated that he knew respondent to be an honest person.

(50) Alfonso Sebia is the half owner of All Staffing Inc., respondent's current employer. Mr. Sebia testified that respondent had the discretion to use Rebrag/All Staffing funds for expenses related to Rebrag as well as personal expenses.

(51) Mr. Sebia was aware of respondent's use of Rebrag funds in paying back the Gusick estate and to cover an overdraft in respondent's IOLTA account as well as the tax payment for Mr. Watkins.

(52) Mr. Sebia considered the use of Rebrag funds as loans which remain unpaid.

(53) A malpractice action was filed against respondent in 2000, resulting in a stipulated agreement of the parties which obligated respondent to pay to the plaintiff the amount of $50,000. Respondent has paid approximately $10,000 toward that obligation.

(54) In 2002, respondent was making a transition from the private practice of law to employment at All Staffing and during this time the proceeds from his private practice were insufficient to meet his financial obligations.

(55) In January 2003, respondent became a part-time employee of All Staffing and in April 2004 he became a full-time employee.

(56) Respondent closed out all of his accounts and no longer maintains a private law practice.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person.

(2) R.P.C. 1.15(d)—Notwithstanding paragraphs (a), (b) and (c), and except as provided below in paragraph (e), a lawyer shall place all funds of a client or of a third person in an interest bearing account.

(3) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the board for consideration of the charges against Daniel Zeigler. A petition for discipline filed against respondent alleges that he violated Rules of Professional Conduct 1.15(a) and (d) and 8.4(c) when he commingled estate funds in his office account and used the funds for his personal bills. No answer to petition for discipline having been filed, the facts therein are admitted, pursuant to Rule 208(b)(3), Pa.R.D.E. Those facts establish that in August and September 2002 respondent was representing the personal representative of the Edward Gusick estate and received estate assets of $1,180.19 and $29,404.54, for a total of $30,584.73. The Gusick estate funds were commingled in respondent's office account with personal funds of respondent. At the time of the commingling, respondent maintained and was using an IOLTA trust account for his practice.

Respondent had no authority to personally use any of the Gusick estate funds but between September 5, 2002, and April 10, 2003, he converted to his own use a total of $15,039.46 in Gusick funds. The misuse of the funds included $5,156.10 in payments on personal bank loans, $2,838.40 to Kutztown University for obligations of his

daughter, and $250 to Lawyer Assessment in payment of his 2002-2003 annual Attorney Registration fee.

In April 2003, respondent transferred $11,000 in remaining Gusick estate funds from his office account to his IOLTA trust account and made $23,822.65 in distributions to close out the estate. The $12,822.65 shortage was paid from funds he held for a client, now his employer, Rebrag Inc. or All Staffing Inc., and in part from $2,447.56 he had received from a client named Watkins for payment of a tax obligation. Respondent's use of the Rebrag Inc. or All Staffing Inc. funds was later ratified by principals of those companies and the amounts are considered loans to respondent, which remained unpaid at the time of the hearing.

The record demonstrates that petitioner has proven by clear and convincing evidence that respondent committed professional misconduct by commingling fiduciary funds with personal funds and that on several occasions, respondent used client funds which should have been deposited in his trust account to pay personal bills.

Respondent presented evidence that he was entitled to use funds given to him by Rebrag Inc./All Staffing Inc. for personal use, and in fact he did use those funds to make restitution to the clients whose money he used to pay his own expenses. The CEO of Rebrag testified that respondent was permitted to use Rebrag funds in that way. Regardless, the fact that respondent had funds available to him in another account does not lessen the seriousness of his misconduct. *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987). In any event, the commingling began prior to the availability

of Rebrag funds and continued even after petitioner began its investigation.

After overdrawing on his trust account and faced with questions regarding his finances, respondent failed to respond to requests for information, one from the Pennsylvania Lawyers Fund for Client Security and the other from petitioner. He failed to respond to two subpoena duces tecum served on him by petitioner. Respondent's poor record keeping might possibly explain the overdraft of his trust account, but it does not explain his lack of response when contacted by petitioner and the Client Security Fund, and after service of the subpoenas. A troubling aspect of this case is that the commingling continued after respondent was on notice of possible discrepancies and the subsequent investigation. There is no evidence that he attempted to change his office procedures to rectify any problems.

Respondent has no prior history of discipline since his admission in 1972. He has indicated that he no longer intends to continue in private practice and has closed all of his office accounts. While the closing of the accounts may ensure that he will not commit the same misconduct, it does not obviate the need for discipline in the instant matter.

An attorney's role as a fiduciary requires the highest standards of professional conduct. *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981). The mishandling of fiduciary funds requires some form of public discipline. In the recent matter of *Office of Disciplinary Counsel v. Harmon,* 970 Disciplinary Docket no. 3 (Pa. Dec. 13, 2004), the attorney therein commingled trust funds with her own funds, used client

funds to pay personal bills, and utilized entrusted funds of a client to pay prior clients whose funds had been improperly used by the attorney. This attorney failed to appear for the disciplinary hearing. The attorney was suspended for three years by order of the Supreme Court of Pennsylvania.

In recommending a thee-year suspension to the court in the *Harmon* case, the board noted the following cases: *Office of Disciplinary Counsel v. Foti,* 835 Disciplinary Docket no. 3 (Pa. July 24, 2003), in which an attorney with no record of discipline and who presented mitigation was suspended for three years for having converted $33,000 in fiduciary funds and for failing to timely pay over settlement proceeds to a client; *Office of Disciplinary Counsel v. Olshock,* 862 Disciplinary Docket no. 3 (Pa. Oct. 24, 2003), in which the attorney was suspended for three years for having converted $18,000 from an estate; and, the case of *In re Anonymous No. 115 D.B. 97,* 564 Disciplinary Docket no. 3 (Pa. March 23, 2000), in which an attorney who had no prior history of discipline but who had commingled and converted client funds over a period of time was suspended for three years.

The board does not find respondent's misconduct to be quite as egregious as that of the respondent-attorney in *Harmon,* most notably due to the fact that respondent did appear for the hearing and present a case. However, in comparing the instant matter to the other cases cited in the *Harmon* matter, the board is persuaded that respondent's conduct falls within a range of conduct exhibited therein. A suspension for a period of three years is appropriate to address respondent's misconduct.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Daniel F. Zeigler, be suspended from the practice of law for a period of three years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

## ORDER

And now, June 14, 2006, upon consideration of the report and recommendations of the Disciplinary Board dated March 17, 2006, it is hereby ordered that Daniel F. Zeigler be and he is suspended from the bar of this Commonwealth for a period of three years, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.